Jeffrey P. Kaufman
Idaho State Bar No. 8022
Office of Kathleen A. McCallister,
    Chapter 13 Trustee
P.O. Box 1150
Meridian ID  83680
(208) 922-5100 - Telephone
(208) 922-5599 - Facsimile
jpk@kam13trustee.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| In re: | Chapter 13 |
|---|---|
| Pavel Stanislov Babichenko,<br>                                    Debtor | Case No. 20-00566-TLM |

## TRUSTEE'S MOTION TO CONVERT CASE TO CHAPTER 7 OR DISMISS CASE WITH A BAR TO REFILING

COMES NOW Kathleen A. McCallister, the standing Chapter 13 Trustee for the United States Bankruptcy Court for the District of Idaho ("Trustee"), by and through her attorney, Jeffrey P. Kaufman, and, pursuant to 1307(c), FRBP 1017(f)(1) and 9014, hereby moves the Court for the entry of an order converting this case to one under chapter 7 or dismissing this case, whichever the Court finds to be in the best interests of creditors and the estate, and states the following in support:

### INTRODUCTION

1. Debtor filed for Chapter 13 relief on June 22, 2020.  Docket No. 1.

2. Debtor lists $159,187 in general unsecured claims.  Docket No. 1, p. 32.

3.  On his Schedule A/B, Debtor discloses interest in real property located at 2890 S. Pasa Tiempo Way, Eagle, ID 83616 (the "Pasa Tiempo Propety"), with a current value of $1,349,600.00; solely owned by Debtor. *Id*., p. 11.

4.  On his Schedule D, Debtor discloses that the Pasa Tiempo Property is encumbered by a lien in favor of Rushmore Loan Management Services ("Rushmore"), estimated to be valued at $955,527.88. *Id*. at p. 26. Debtor does not disclose any other liens encumbering the Pasa Tiempo Property. Trustee notes that these values are identical to the same values listed in Mr. Babichenko's prior bankruptcy case, filed on February 28, 2020, and voluntarily dismissed on April 21st.[1]

5.  Assuming an eight percent cost of sale, it is estimated that, based Debtor's sworn assertion as to its value, the Pasa Tiempo Property would net approximately $186,104 in non-exempt proceeds upon sale:

| | |
|---|---|
| Gross Sales Price | $1,349,600.00 |
| Cost of Sale (estimated at 8%) | ($107,968.00) |
| Rushmore Mortgage Payoff | ($955,527.88) |
| Debtor's Homestead Exemption[2] | ($100,000.00) |
| Net Proceeds | $186,104.12 |

---

[1] Trustee has reviewed Debtor's Statement of Financial Affairs in this case. Docket No. 1, pp 41-52. Question 6 does not show any payments made on the Rushmore Loan Servicing claim in the 90 days prior to the initiation of this case. As such, Trustee suspects that due to interest accumulating on its claim, Rushmore Loan Servicing's claim may actually be higher than what disclosed in Debtor's last case. Per information provided Debtor and using the proposed interest rate in Debtor's plan, this loan appears to accrue interest in at least $65.45 per day ($955,527 x. 0.025 = $23,888.18 / 365 = $65.45), or $1,963 per month. Trustee used the lower 2.5% rate as proposed in ¶ 3.1 rather than the 3.5% as proposed in ¶ 8.1.

[2] Trustee reserves her right to object to Debtor's homestead exemption.

**20-00566-TLM | In re Babichenko**
**TRUSTEE'S MOTION TO CONVERT CASE TO CHAPTER 7 OR**
**DISMISS CASE WITH A BAR TO REFILING**                                                                 Page 2

6.     On June 23rd, Debtor filed his Idaho Form Chapter 13 Plan ("Plan").  Docket No. 16.  Debtor proposes to pay $3,135 per month for sixty months, for a total plan base of $188,100, of which only $169,290 is available for disbursement after taking into account of trustee's fees.  *Id*. at ¶¶ 2.1, 4.2.  Debtor's plan includes payment of an estimated mortgage arrearage in the amount of $150,000[3], at 2.5%[4], while also proposing that the Trustee be the disbursing agent of the current monthly installment payments of $6,565.94.[5]  *Id*. at ¶ 3.1.  Debtor's plan is clearly not feasible as proposed.  To pay the arrears and the monthly mortgage payment of $6,566, Trustee would need to receive a minimum of $10,253 per month.[6]  This figure does not take into account any funds that would need to be paid to the unsecured creditors in order for Debtor to satisfy §1325(a)(4).  According to Debtor's plan, it is estimated that if the estate's assets were liquidated in a chapter 7 case, the nonpriority unsecured creditors would receive $1,172,574.55.  Docket No. 16, ¶ 5.1.  Over sixty months, that would require an average plan disbursement of approximately $19,542 per month to such creditors, thereby requiring an additional $21,713 from the Debtor, per month, to satisfy §1325(a)(4).  Debtor's plan is lands significantly short of that mark.

---

[3] This figure is inconsistent with the amount asserted by Rushmore Loan Servicing Debtor's prior case.  "As of March 28, 2020, the total amount in default was approximately $135,160.59."  Case No. 20-00197, Objection to Confirmation of Chapter 13 Plan, Docket No. 28, p. 2.

[4] Debtor's plan suggests an interest rate of 2.5% to be paid on the arrears owed to Rushmore Loan Servicing.  It is uncertain at this time whether that is the actual rate at which the principal owed on this claim accrues, or whether that is the rate Debtor proposes to be paid in addition to, or in replacement of, the regular rate at which the arrears accrued (which is unknown to the trustee).  Debtor has also proposed inconsistent interest rates in his plan in paragraphs. 3.1 (2.5%) and 8.1 (3.5%).

[5] Debtor's plan suggests that Trustee will disburse a total of $163,725.00 on this claim.  The math does not add up.  Per Trustee's calculations loan amortization of $150,000 loan over 60 months at 2.5% requires payment of $2,662.10 per month for a total repayment of $159,726.

[6] $6,566 (conduit) + $2662 (arrears) = 9228 ÷ 0.9 (trustee's fee) = $10,253.

7.   On his Schedule I, Debtor discloses $5,375 in monthly net income from his business Sahara Case, LLC. Docket No. 1, p. 37. Additionally, Debtor claims to receive $1,500 from family assistance for a combined monthly income of $6,875. *Id*.

8.   On his Schedule J, Debtor includes a $6,566 interest-only mortgage payment as an expense and along with other expenses has combined monthly expenses of $9,924. Docket No. 1, pp. 38-40. Compared to his Schedule I, Debtor operates at a negative $3,968.00 each month. Though this is likely due to Debtor proposing that Trustee make the regular mortgage payments, yet included those funds in Debtor's budget. Even if it was the other way around, and Debtor did not intend to propose a mortgage conduit plan, but only desires that the trustee pay the mortgage arrears, Debtor's budget still does not allow him to maintain this residence. In either scenario, Debtor cannot afford the plan:

|  | Scenario 1 – conduit plan | Scenario 2 – direct mtg. pymt |
|---|---|---|
| Schedule I income | $6,875 | $6,875 |
| Non-Mtg. Expenses (Sch. J) | ($3,358) | ($3,358) |
| Direct Mtg Payment: | ($0.00) | ($6,566) |
| Amt. Available | $3,517 | ($3,049) |
| plan disbrsmnt. on mtg claim | ($9228) reg. pymt + arrears | ($2662) arrears only |
| Trustee's fees | ($1,025) | ($295) |
| Balance: | ($6,736) | (-6006)[7] |

---

[7] The figures represented herein pertain only to debtors' ability to afford the mortgage claim for demonstrative purposes only and should not be interpreted at a waiver to any other issues or deficiencies in Debtor's plan.

Consequently, debtor's plan is not only not feasible, but Debtor cannot propose a feasible plan that does not provides for Debtor's surrender or immediate sale of the Pasa Tiempo Property.

9. Pursuant to § 5.1 of the Debtor's plan "If the estate of the debtor(s) were liquidated under Chapter 7, nonpriority unsecured claims would be paid approximately $1,172,574.55. Payments on allowed non-priority unsecured claims will be made in this amount." Docket No. 16. As noted above, Debtor's proposed plan is not funded to pay the nonpriority unsecured creditors such an amount; that would require approximately $20,713 per month. It appears then, by the Debtor's own admission, that nonpriority unsecured creditors would receive better treatment by a Chapter 7 liquidation of Debtor's estate.

10. Trustee recognizes that in ¶ 5.3 of the plan, Debtor has separately classified all the unsecured creditors disclosed on his Schedule F. However, the separate classification does not actually create separate classes for the nonpriority unsecured creditors. Instead, Debtor proposes in ¶ 5.3 to reduce his nonpriority unsecured claims to $0.00 and pay them nothing during this case.[8] However, on his Schedule F, Debtor admits to owing these debts at the amounts listed. They are not listed as contingent and have specific dollar amounts. They are not marked as disputed claims nor being subject to a setoff.[9] Debtor's own submissions reflect that these are

---

[8] For three of the claims, Debtor contends the basis for separate classification is because the claims are "resolved." The basis for another claim's separate classification is that it is "in negotiations to resolve." There is no basis listed for the separate classification for the other three listed claims.

[9] Debtor's Statement of Financial Affairs does not reflect the payment of any antecedent debt in the 90-day preceding the June 23rd filing date. Nor were any such payments reflected in the SOFA filed in his prior chapter 13 case.

valid claims.[10]  The proper mechanism to reduce these claims to zero, if that is the goal, is through a § 502 claim objection pursuant to Rule 3007 with Rule 7004 notice given, and not by separate classification of all the unsecured claims in his plan.[11]

11.     Debtor is currently embroiled in a federal lawsuit; the criminal case styled as United States v. Babichenko, et al, proceeding in the United States District Court for the District of Idaho, Case No. 18-00258-BLW (the "Criminal Case").  Per the Court's Docket in the Criminal Case, Debtor is currently facing the following charges: Conspiracy to Commit Wire Fraud (2 Counts), Conspiracy to Traffic in Counterfeit Goods, Trafficking in Counterfeit Goods (2 Counts), Conspiracy to Launder Money, Money Laundering Conspiracy, and Money Laundering (3 Counts).[12]  On April 1, 2020, the trial in the Criminal Case was reset to February 1, 2021.  Trustee has been advised by the United States Attorney's office that there are several trademark-holder companies that were allegedly victimized by the criminal enterprise in which Debtor is alleged to have partaken; those companies include Samsung, Apple, Underwriter

---

[10] Since American Express has already filed a claim for $5,535.48, it appears that there may be a dispute as to whether its claim is "resolved," as is indicated by Debtor in ¶ 5.3 of his plan.

[11] This Court has previously cautioned debtors to consider the application of judicial estoppel when objecting to proof of claims that are listed in the schedules as undisputed, noncontingent, and liquidated:
> Before Debtors assert a new objection, they may want to consider additional case law that precludes debtors from objecting to a proof of claim when they scheduled the claim and did not mark it disputed, contingent or unliquidated.  Such objections have been barred by judicial estoppel, which precludes a party from taking an inconsistent position from the one it earlier asserted, see *In re Reynolds*, 470 B.R. 145–49 (Bankr. D. Colo. 2012), or have been barred as a violation of Rule 9011(b), see *MacFarland*, 462 B.R. at 882.  That Debtors' scheduling of the claim is a mere $.32 different from the proof of claim filed by FIA would also appear rather telling.

*In re Johnson*, 2012 Bankr. LEXIS 5231, 2012 WL 5430952, FN 5 (Bankr. D. Idaho 2012).

[12] Debtor's wife is also a defendant in the Criminal Case and she faces the following charges: Conspiracy to Commit Wire Fraud (2 counts), Conspiracy to Traffic in Counterfeit Goods, Trafficking in Counterfeit Goods, Conspiracy to Launder Money, Money Laundering Conspiracy, and Money Laundering.

Laboratories, and Qualcomm. Trustee is advised that if convicted, the alleged victims would be entitled to restitution under the Mandatory Victims Restitution Act (18 USC §3663A) and that this criminal matter implicates both restitution and forfeiture well over ten Million dollars ($10,000,000.00). It does not appear that Debtor has apprised these alleged victims of this bankruptcy case filing – or even the United States Attorney on behalf of the alleged victims.

12. On June 24, 2020, Debtor filed a motion pursuant to §362(c)(3)(B) to extend the automatic stay beyond 30 days. Docket No. 18. In that motion, Debtor admits that this case was filed to stop foreclosure of his home.

> Specifically, Debtor filed for Chapter 13 relief based on the pending foreclosure of his home, which was set for March 3, 2020, and which has been reset for June 23, 2020. *Debtor has a wife and five children living in the property*, and therefore *stopping the foreclosure* on June 23, 2020 *is the primary basis for this Chapter 13 case*.

*Id*., pp at 2-3 (*emphasis* added). His prior case was also intended to stop a pending foreclosure:

> Debtor filed for Chapter 13 relieve [sic] based on a pending foreclosure which was set for March 3, 2020. The eminent foreclosure was the foreclosure on the Debtor's primary residence. *The Debtor has a wife and four children living in the property*, and therefore *stopping the foreclosure was a primary basis for a Chapter 13 case*.

Case No. 20-00197, Response to Trustee's Motion to Convert or Dismiss Case to Chapter 7 or Dismiss Case (Docket No. 30) and Motion to Dismiss Case, Docket No. 38, ¶ 1 (*emphasis* added).

## ARGUMENT

Debtor did not file this case or his plan in good faith, but as a tactic to obstruct and delay payment to his creditors. Debtor's plan is not feasible and was admittedly filed to thwart the second scheduled foreclosure sale of the Pasa Tiempo Property, after the first one was thwarted by Debtor's prior bankruptcy case. Debtor's attempt to use Chapter 13 as a parking lot is

severely prejudicial to his unsecured creditors. Debtor holds approximately $186,000 of non-exempt equity in the Pasa Tiempo Property. This sum is sufficient to provide at least $170,000 to Debtor's unsecured known creditors, should the estate be entitled to liquidate the Pasa Tiempo Property.

The claim encumbering the Pasa Tiempo Property, according information provided by Debtor, accrues at approximately $1,963 per month. Not only can Debtor not afford to retain the Pasa Tiempo Property, but doing so is at the direct cost to general unsecured creditors, who are essentially losing out on $1,963 of non-exempt equity each month the Rushmore claim remains unpaid. Even if Debtor only pays interest, and assuming that is agreed-to by Rushmore, the unsecured creditors are then forced to gamble that the housing market will not take a downward turn or that the condition of the property remains the status quo; all the while being compeLled to just wait for two years for no apparent reason.[13] They should not have to make such a gamble when there is sufficient equity to pay all their claims in full – as soon as the house can be sold. Consequently, it is in the best interests of Debtor's creditors that this case be converted to chapter 7 to allow a chapter 7 trustee market and liquidate the Pasa Tiempo Property as soon as practicable; not some 25 months down the road as nebulously proposed by Debtors.

Trustee is cognizant that Debtor's sizeable family resides in the Pasa Tiempo Property. It appears that Debtor may aver that he is stopping the foreclosure to protect his family from being without a home. While such is a noble and valiant cause, retaining the Pasa Tiempo Property

---

[13] The Debtor's lack of funds begets the question: Can Debtors afford to maintain and preserve the value of nonexempt equity in this property for their unsecured creditors?

**20-00566-TLM | In re Babichenko**
**TRUSTEE'S MOTION TO CONVERT CASE TO CHAPTER 7 OR**
**DISMISS CASE WITH A BAR TO REFILING**                                        Page 8

will most likely do more harm than good to his children. By keeping the house, Debtor proposes to operate at a negative $3,408 per month. That is because the Pasa Tiempo Property requires 95.5% of his income for the regular monthly mortgage payments of $6,566. Thus, by attempting to keep this staggering roof over his family's heads, Debtor lacks the funds to take care of the children's many other life necessities such as food, clothing, utilities, transportation, medical care, education, recreation, etc.; essentially depriving these children of the fiscal maintenance and support they need for their own welfare.

Instead, a conversion to a chapter 7 would likely allow the Debtors to continue to reside in the property until sold.[14] It would likely be more difficult for Rushmore to obtain stay relief while the chapter 7 trustee pursues liquidation. It would free up significant funds that Debtor can commit to the maintenance and support of his family's welfare. Furthermore, assuming their homestead exemption is not disallowed, they would also likely receive a $100,000 from the sale, which could be used to acquire another homestead.

*Cause for Conversion or Dismissal Pursuant to § 1307(c)(1)*

Even if Debtor intended to propose payment to his unsecured creditors upon the sale of the Pasa Tiempo Property, not only is that not effectively stated in the plan, but Debtor proposes to list the Pasa Tiempo Property for sale on or before the 25th month of the plan – approximately two years from now. Yet Debtor provides no reason why the home cannot be listed and sold

---

[14] Trustee makes no guarantee of this, but merely makes the suggestion based on past experiences of chapter 7 trustee's liquidating homesteads.

today.  Such delay is unreasonable and prejudicial to his creditors and, pursuant to § 1307(c)(1), warrants conversion or dismissal of Debtor's case.

*Trustee Recommends Conversion of the Case to Chapter 7*

Conversion of this case to one under chapter 7 is in the best interest of the creditors and the estate.  A chapter 7 trustee can liquidate, at a minimum, the Pasa Tiempo Property and disburse the non-exempt proceeds to Debtor's unsecured creditors in a more expedited fashion than the manner proposed by Debtor.  It is also likely the chapter 7 trustee may pay the scheduled unsecured claims in full.[15]  Furthermore, a chapter 7 liquidation of the Pasa Tiempo Property does not rely on the outcome of the Criminal Case; which might not be known for a year from now (not considering the length of any appeals and/or remands).

Additionally, Debtor lists several businesses which may have significant value.  Since chapter 13 is voluntary, the chapter 7 trustee is better suited to explore extracting the cash value of Debtor's interest in these various businesses, one of which is alleged to be a Brazilian company.  This may be necessary if the Pasa Tiempo Property fails to garner sufficient non-exempt equity to pay all unsecured claims.

*Alternatively, Should the Court Dismiss this Case, Trustee Requests
the Court Impose a One Year Bar to Debtor Filing a Subsequent Reorganization Case.*

Pursuant to § 349(a), and in the event Court orders the dismissal of this case instead of conversion to chapter 7, Trustee hereby requests that the Court include in such order the

---

[15] Using prior values, and regard to just the liquidation of the Pasa Tiempo Property, it is estimated that a chapter 7 trustee would take a commission of approximately $13,835, exclusive of administrative costs, leaving approximately $172,269 available to disburse to the unsecured creditors; which would provide for a full payment of the general unsecured claims listed.

imposition of a one year bar on debtor's ability to refile a bankruptcy petition in any chapter under Title 11 other than Chapter 7.  Trustee submits that Debtor's repeated filings, both of which reflect no ability to retain the Pasa Tiempo Property, were designed and executed to thwart the secured creditor's ability to foreclose on the property and cause further delay.  Debtor's desire to use chapter 13 as a parking lot instead of actually reorganizing amount to repeated abuse of the provisions of chapter 13.  Debtor should be estopped from further abusing the provisions of chapter 13.

WHEREFORE, the Trustee prays that the Debto rs' bankruptcy case be converted to one under chapter 7, or in the alternative, the case be dismissed with a one-year bar to refiling, whichever the Court finds to be in the best interests of creditors and the estate.

DATED:  June 30, 2020

OFFICE OF KATHLEEN A. McCALLISTER,
CHAPTER 13 TRUSTEE

By:  /s/ *Jeffrey P. Kaufman*
Jeffrey P. Kaufman, Staff Attorney

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 30, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Office of the U.S. Trustee
ustp.region18.bs.ecf@usdoj.gov

Rafael Antonio Icaza, Attorney for Debtor
ricaza@allegiancelegal.net

**AND I FURTHER CERTIFY** that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated:

Via first class mail, postage prepaid addressed as follows:

Pavel Stanislov Babichenko
2890 S. Pasa Tiempo Way
Eagle, ID  83616

                                                                              */s/  Jeffrey P. Kaufman*
                                                                                  Jeffrey P. Kaufman